## WOODRUFF vs. PETERSON.

THIS case is reported in 54th *Barbour*, at page 252; the opinion of MORGAN, J., there published, being reported as the opinion of the court. The opinion, or vote of FOSTER, J., in the case, was founded upon the following written opinion, which was read at the time of the decision. And while all the justices concurred in the result, Justice FOSTER understood Justice MULLIN to concur in the views expressed by him.

If there is any misunderstanding as to the *grounds* of the decision, it is manifestly proper that Judge FOSTER'S opinion should be published. But the reporter deems it due to himself to state that he received the opinion first published directly from the judge delivering it; and when it was published he had no knowledge that any other was delivered.

FOSTER, J. The facts found by the referee were supported by the proofs, and, so far as is essential in the determination of the case, are as follows: In July, 1866, the plaintiff had on his premises a quantity of cord-wood, which was cut in the winter previous, and was corded up in small piles. Some wood had been taken from some of the piles, and some of them had partly fallen down, and in July, 1866, were in that situation upon a lot of from three to four acres. At that time the defendant applied to the plaintiff to purchase some wood. They went together to where the wood was, and saw the most of the piles, and agreed by parol for the sale of it to the defendant at the price of $3.50 per cord, the plaintiff to draw it to another place and there pile it, so that it could be measured, and leaving out the large logs, and the defendant was then to take it away. No money was then paid—no delivery in whole or in part. The contract was not in writing, and the value of the whole wood was more than

$50; so that the contract was voidable at the option of either of the parties.

The plaintiff in pursuance of the verbal agreement drew the wood, or rather drew 18½ cords of wood, from the lot before mentioned, of that which had been cut and was lying there, and piled it up in one pile at the place agreed upon; and there was no dispute that it was so piled that the purchaser could by an examination of it, readily see both the quantity, size and quality of the wood.

Soon thereafter the defendant sent his hired man and team, (with directions to get one load of it and to measure the pile and let him know the quantity,) who took about one cord of the wood from the east end of the pile, and drew it to the defendant, who used it. He went again the next day and obtained a second load of wood, which was not as good as that in the first load, and informed the defendant that, including what he had taken away, there was 18½ cords of it, and also informed him that there was large wood, soft wood and wet wood in the pile. The defendant soon afterwards sent the man and team for another load, saying that he would go too, and soon after the man commenced loading, the defendant arrived and examined the pile for himself, and had a conversation with the plaintiff; and after or at about the time that his servant left with that load, the defendant declined to take any more of the wood, alleging to the plaintiff that he had included in the pile more wood than was in the several piles in the lot when the agreement was made, and had included wood which was excluded by the contract.

The findings of the referee show that the plaintiff did include in the pile wood which by the verbal contract was not to have been included. And it further appeared, and was found, that the defendant was not aware, until after the second load was received, that any of the wood was not of the kind or quality agreed upon.

The whole amount of the three loads received by the

defendant was three cords, and none of the wood was paid for. The referee found the defendant liable for the whole wood included in the pile, at the contract price. Upon his report judgment was rendered for the sum found.

I think it very clear that the plaintiff was entitled to recover for all the wood, and that the finding of the referee was correct. The right to recover does not rest, as seems to have been supposed by the defendant's counsel, upon pressing the rule as laid down in *Reed* v. *Randall*, (29 *N. Y. Rep.* 358,) in the wrong direction; nor does it rest upon the decision in that case at all. It is sustained by the application to the case of an elementary principle which is perfectly clear, and the general application of which is as just as it is palpable.

There is no doubt that after the plaintiff had drawn out and piled the wood as he did, it was entirely optional with the defendant to take it or not, either for the reason that the verbal contract was not binding, or that the wood was not, all of it, such as he had bargained for.

The plaintiff had done all that he was to do, when the wood was drawn out and piled ready for measuring and acceptance by the defendant; and it was the duty of the defendant before he took it away, first to elect whether he would abide by the contract, which he had made, and if so, to examine to see whether the wood was piled as agreed, and was of the quantity and quality which the agreement called for.

If instead of sending his servant to draw away the first load, he had done it himself, it is indisputable that he could not afterwards allege either that the contract was void, or that the wood was not such as he had agreed for. The law would undoubtedly have held him as having ratified the contract, and as having waived any want of fulfillment on the part of the plaintiff. He could not be permitted, under such circumstances, to take even one load of the wood, and then repudiate the residue of the con-

Woodruff *v.* Peterson.

tract; much less could he be permitted to take three cords from the best end of the pile, as he did, at the contract price, and leave the residue. Nor could he claim that he took the three loads as a trespasser, and not under the contract; nor does it in the least change the rule, in its application to this case, that personally the defendant did not know of the defects in the wood until after the first two loads had been taken. It was his duty to ascertain, how it was, before he caused any of the wood to be taken under the contract. He was as much bound by the act of his servant, who went for the three loads, as if he had drawn it away himself. He not only adopted the act of his servant, which would be enough, but he directed the very act which the servant performed. And now, if the application of these well settled rules happens to operate injuriously to him, it is only because he was negligent in attending to his own interests.

If one can be protected from the rules which declare an acceptance in the case of an executory contract is a waiver, because he sends his servant to receive the property, the mischiefs arising in such cases would be much greater than they ever can be, by applying the principle where the defect is apparent, as well where the property is received by the agent as if it were received by the principal. If he had any doubt or care, as to the performance of the contract on the part of the plaintiff, he should have seen to it before it was too late. He should have gone for the wood himself, or properly instructed his agent in regard to it.

The judgment should be affirmed.